UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

John P. Murphy,                                              Civil No. 03-6544 PAM/AJB

           Plaintiff,

v.                                                           **REPORT AND RECOMMENDATION**

Jon Penton and Connie Roehrich,

           Defendants.

This matter is before the Court, Magistrate Arthur J. Boylan, on plaintiff's motion for summary judgment on liability on claims under 42 U.S.C. § 1983. Plaintiff is a pro se prisoner[1] whose complaint alleges violation of civil rights arising out of defendants' denial of his requests to be transferred to a certain minimum security facility that would fit his needs. In particular the complaint alleges that plaintiff was eligible for transfer to a minimum security facility and that defendant Jon Penton, director of psychological services at MCF–Faribault, blocked or otherwise interfered with such a transfer for purposes of discrimination based upon plaintiff's status as a Vietnam War veteran and in violation of the Americans with Disabilities Act. The complaint further alleges that defendant Connie Roehrich, warden at MCF–Faribault, is liable for failing to correct defendant Penton's discriminatory actions in response to the prisoner's grievance and that both defendants are sued in their individual capacities.[2]

---

[1] Plaintiff was incarcerated at MCF–Faribault at the time this action was commenced. He is not presently in prison but is on intensive supervised release status.

[2] Complaint, Section IV. Statement of Claim, para. 8.

Plaintiff argues that he is entitled to summary judgment because he has stated a claim upon which relief could be granted under the ADA; that his claim is not moot as a result of his halfway house placement or a lack of standing;[3] that he has a disability under the ADA and a right to equal treatment under the constitution; and that defendants are not entitled to qualified immunity. Defendants oppose the motion for summary judgment, asserting that the complaint does not state whether defendants are sued in their official or individual capacities;[4] the action is moot as result of the plaintiff's current intensive supervised release status; and plaintiff has not established that he is a disabled person for ADA purposes. Defendants also object to plaintiff's apparent efforts to allege retaliation claims on motion for summary judgment. Mark B Levinger, Esq., Assistant Minnesota Attorney General, represents the defendants. The action has been referred to the United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed below the Court concludes that plaintiff's motion for summary judgment should be denied in all respects. The Court further concludes that the action is moot to the extent that the plaintiff seeks prospective relief relating to his custody status or place of incarceration and the plaintiff's claims are barred by qualified immunity to extent he money damages from defendants for action taken in their individual capacities.

---

[3] Plaintiff states that he was in prison at the time the complaint was filed and when he filed this motion for summary judgment, but that he had been in a halfway house for a period of two months after the complaint was filed and until being terminated from the halfway house for a technical violation and thereafter returned to prison. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, page 7.

[4] This assertion is incorrect. The complaint expressly states that defendants are sued in their individual capacities. The complaint does not state that defendants are sued in their official capacities, but the allegations relate to actions taken by defendants in the course of their employment.

**Background**

During the time in which the claims in this action arose plaintiff John Murphy was a Minnesota state prisoner incarcerated at MCF–Faribault. He was given a minimum custody classification on January 13, 2003, while imprisoned at MCF–Moose Lake and was transferred to MCF–Faribault, on February 20, 2003. At Faribault plaintiff was placed in a minimum security dorm setting and at various times until being discharged on intensive supervised release on December 24, 2003, he was moved into double rooms, four-man rooms and six-man rooms, as well as a 15-day period spent in segregation.[5] While at MCF–Faribault the prisoner's security classification changed on several occasions. He entered the facility as a higher level 2 minimum security inmate. On August 7, 2003, he was reclassified to a more favorable level 1 minimum security status, but was subsequently reclassified to medium security in November 2003, following a disciplinary violation.[6] At the time of the initial transfer, MCF–Faribault was the only Minnesota correctional facility for level 2 offenders.[7] Meanwhile, MCF–Stillwater has a level 1 minimum security unit in which 100 offenders may be housed in four 25-man dorms, and MCF–Lino Lakes has a level 1 minimum security unit in which 125 offenders are housed in single rooms.[8] The Lino Lakes facility is generally viewed by prisoners as the most desirable minimum security placement in the Minnesota system because of the single room

---

[5] Affidavit of Jacqueline Wente.

[6] Affidavit of Brent Garrick, para. 5.

[7] Id., para. 6.

[8] Id., para. 13.

assignments.[9] Transfers from MCF–Faribault to Lino Lakes minimum security are exceedingly rare and would first require that the prisoner be placed in the Faribault facility's minimum security system in order to get on a waiting list for another transfer.[10] Inmates who are eligible and desire a transfer to a minimum security facility do not have the option of choosing between Lino Lakes and Stillwater, but must accept the first available opening.[11]

Plaintiff Murphy was interviewed for purposes of mental health screening on July 8, 1999, at which time he generally denied, or indicated that he did not recall, experiencing particular mental health problems or treatment for mental health issues.[12] In a subsequent assessment on September 12, 2001, he reported symptoms of post traumatic stress syndrome relating to Vietnam war combat, as well as recent anxiety/panic attacks and some memory problem.[13] No critical mental problems were observed and Mr. Murphy did not want psychological services for his PTSD symptoms.[14] Upon his arrival at MCF–Faribault, the prisoner's immediate placement in a minimum security unit was delayed as a result of a mental health hold on such placement ordered by psychological services director Jon Penton.[15] When the prisoner inquired about his placement by kite

---

[9] Id.

[10] Affidavit of Brent Garrick, para. 12.

[11] Id.

[12] Complaint, Exh. 5.

[13] Id., Exh. 6.

[14] Id., Exh. 7.

[15] Id., Exh.1.

dated March 19, 2003, he was advised that there appeared to be no reason he could not live in a dorm setting.[16] On August 9, 2003, Murphy sent a kite to Penton seeking approval for placement on a transfer list to MCF–Lino Lakes, further noting that Lino Lakes minimum security did not have dorms.[17] Penton responded by writing that the prisoner had previously indicated he did not want to be sent to minimum due to mental health issues.[18] This reply prompted Murphy to sent a kite stating that he had no mental health issues, though he did have a problem with dorm living, and that he was certainly healthy enough to be sent to Lino Lakes minimum security.[19] The prisoner wrote additional kites on this subject[20] and filed a formal grievance dated September 8, 2003, therein asserting that a transfer to Lino Lakes was being blocked by the psychological services director.[21] Defendant Roehrich dismissed the grievance, citing the prisoner's own concern about panic attacks in the dorm setting, i.e. the minimum security at MCF–Faribault, and further stating that she would not override the decision of the Psychological Services Department to block a transfer to minimum security.[22] Plaintiff now asserts that he is entitled to summary judgment in his favor on his claims of discrimination based upon Vietnam veteran and disability status, as well as on the defendants' assertion of qualified immunity. Plaintiff has

---

[16] Id., Exh. 3 and 4.

[17] Id., Exh. 9.

[18] Complaint, Exh. 9.

[19] Id., Exh. 10.

[20] Id., Exh. 11, 12, and 13.

[21] Id., Exh. 14.

[22] Id.

also alleged retaliation for filing this lawsuit.[23]

**Standard of Review**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 106 S.Ct. at 1355, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56(e). Pro se pleadings are held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21, 92S.Ct. 594, 596 (1972). However, the party opposing the motion still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

---

[23] Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, Conclusion, page 12.

**Requested Relief**

In his complaint plaintiff merely requests a jury trial on his discrimination claim and he makes no specific demand for money damages or injunctive relief, while expressly stating that defendants are sued in an individual capacity. In his memorandum in support of summary judgment, however, plaintiff generally states that he is entitled to an amount of damages to be determined at trial, while also arguing that the action is not moot and that he has standing to seek injunctive relief.

To the extent that the plaintiff seeks injunctive relief the action is moot. It is undisputed that Mr. Murphy was released on intensive supervised release on October 25, 2004, and there is no evidence that he has been reincarcerated since that time. A prisoner's custody status is dependent upon circumstances which are particular to the individual prisoner and any security status determination must be based upon a variety of circumstances existing at the particular time the determination is made, including the reason for incarceration, the prisoner's behavior and health condition, and availability of appropriate facilities. In this instance there is absolutely no need or reason for a present determination of the plaintiff security status, and there is no basis upon which to make a determination with respect to his custody status in the event of reincarceration.

**Qualified Immunity.** In their joint answer the defendants have alleged qualified immunity against any damages award and the plaintiff now moves for summary judgment on the qualified immunity defense. Meanwhile, defendants have not moved for summary judgment and have not directly argued in opposition to plaintiff's motion that they are entitled to qualified immunity, though they assert grounds for denying plaintiff's motion on the merits of the disability claim. Defendants essentially assume that they are sued only in an official capacity and the case is therefore moot, but they

also contend that the ADA does not permit suit against them in an individual capacity and they further assert that plaintiff has not shown that he is a disabled person under the ADA, or that he could obtain his requested security status in any event.

The doctrine of qualified immunity protects a defendant from liability for alleged misconduct which he reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred. The Supreme Court has long held that a state officer sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law." Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991). Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages. Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Wiegand v. Spadt, 317 F.Supp.2d 1129, 1137 (D.Neb. 2004)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct 534, 537 (1991). Qualified immunity is immunity from suit rather than a mere defense and should be decided by the court long before trial, though the plaintiff is given the benefit of all relevant inferences on summary judgment, and a party is not entitled to summary judgment on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue. Id. (citing Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)). "Predicate facts" consist of only the relevant circumstances and the acts of the parties themselves, and do not include the conclusions of others with regard to the reasonableness of those actions. Wiegand v. Spadt, 317 F.Supp.2d at 1137 n.3 (citing Pace v. City of

Des Moines, 201 F.3d at 1056).

Plaintiff in this matter has moved for summary judgment on a qualified immunity defense, thereby asserting that as a matter of law the defendants violated the Americans with Disabilities Act in refusing to transfer him to a minimum security facility; that his right to be transferred to such a facility was clearly established under the law; and that defendants were aware that their actions were illegal. In fact, the evidence supports the contrary position and establishes that defendants are entitled to qualified immunity and summary judgment in this case, despite their failure to make a cross-motion.

In the appropriate circumstances summary judgment may be rendered against a moving party and in favor of the non-moving party even in the absence of a formal cross-motion under Rule 56. Jeffers v. Tucker, 839 F.Supp 612, 616 (E.D. Ark. 1993)(citing Johnson v. Bismarck Public School Dist. 949 F.2d 1000, 1004-05 (8th Cir. 1991)). The justification is that "[w]hen there has been a motion but no cross-motion, the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of summary judgment." Id. (citing 10A Wright, Miller, & Kane, Federal Practice and Procedure Sec. 2720, at 29 (2d ed. 1983)).[24] Such practice is consistent with the Rule 56 objective of expediting cases. 10A Wright, Miller, & Kane, Federal Practice and Procedure Sec. 2720 at 352.

Indeed, once the predicate facts relating to qualified immunity are established the court can determine

---

[24] See 10A Wright, Miller, & Kane, Federal Practice and Procedure Sec. 2720, at 345-46 (3d ed. 1998).

whether the conduct at issue was reasonable or not, and this is a determination that should be made at the earliest possible stage in litigation.  Wiegand v. Spadt, 317 F.Supp.2d at 1137 n.3 (citing Pace v. City of Des Moines, 201 F.3d at 1056).

In his motion for summary judgment the plaintiff has taken advantage of the opportunity to present evidence specifically designed to refute the propriety of the qualified immunity defense, albeit unsuccessfully.  Upon review of the record before the Court, and viewing all the evidence in the light most favorable to the plaintiff, the Court concludes as a matter of law that plaintiff cannot show that the conduct of either defendant was in violation of clearly established statutory or constitutional rights of which a reasonable person would have known.  Specifically, plaintiff has not shown that he is a disabled person under ADA or that he had a right to transfer to a particular minimum security facility which could have been violated by defendants.  In addition, plaintiff Murphy has put forth virtually no facts that would support the claim that the defendants took action adverse to him based upon his status as a veteran.  Finally, the plaintiff's contention that defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known is a wholly conclusory argument that is utterly unsupported by predicate facts.  Rather, the predicate facts establish that the plaintiff had no right to transfer to a particular minimum security facility under the circumstances in this case and that the defendants actions were entirely reasonable in light of clearly established law and rational corrections policy.  For these reasons the Court concludes that plaintiff's action for damages against defendants in an individual capacity is barred by qualified immunity.

**Retaliation**

Plaintiff did not allege retaliation in his complaint, but he does appear to be seeking to

advance a claim of retaliation in his memorandum in support of summary judgment.  He contends that he has shown retaliation for filing this lawsuit by being placed in segregation for six days in December 2003, and subsequently having his release revoked.[25]  Plaintiff has not amended the complaint and has not moved for leave to file an amended complaint to include a retaliation claim.  Moreover, he makes no assertion in his motion pleadings that he has exhausted administrative remedies with respect to a retaliation claim.  Under these circumstances dismissal of retaliation claims is appropriate.  Cantrell v. Reed, 2005 WL 566605 (unpublished opinion)(citing Kozohorsky v. Harmon, 332 F.3d 1141, 1143 (8th Cir. 2003)).

Based upon the foregoing discussion, the Magistrate Judge makes the following:

### RECOMMENDATION

It is **hereby recommended** that:

1. Plaintiff John P. Murphy's Motion for Summary Judgment be **denied** [Docket No. 23]; and

2. Summary judgment be granted against the plaintiff and in favor of the defendants and that this action be **dismissed** with prejudice on qualified immunity grounds.

Dated:   March 18, 2005

                                          s/ Arthur J. Boylan
                                         ARTHUR J. BOYLAN
                                         United States Magistrate Judge

---

[25] Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, Conclusion, page 12.

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before April 5, 2005.