UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John P. Murphy,                                           Civ. File. No. 03-6544 (PAM/AJB)

                 Plaintiff,

v.                                        **MEMORANDUM AND ORDER**

Jon Penton and Connie Roehrich,

                 Defendants.

---

This matter is before the Court on Plaintiff's objections to United States Magistrate Judge Arthur J. Boylan's Report and Recommendation ("R&R") dated March 18, 2005. The R&R recommended that this Court deny Plaintiff's Motion for Summary Judgment and sua sponte grant summary judgment to Defendants.

The Court must conduct a de novo review of any portion of the Magistrate Judge's opinion to which specific objections are made. See 28 U.S.C. § 636(b)(1); Local Rule 72.1(c)(2). Based on that review of the record and the submissions of the parties, the Court adopts the R&R.

**BACKGROUND**

**A.**    **Plaintiff's Medical Conditions and Incarceration**

While incarcerated in September 2001, Plaintiff John Murphy reported symptoms of post traumatic stress syndrome relating to combat in Vietnam, as well as recent anxiety attacks and some memory problems. However, Plaintiff rejected an offer of psychological services.

On January 13, 2003, Plaintiff was given a minimum custody classification while incarcerated at the Minnesota Correctional Facility ("MCF") in Moose Lake, Minnesota. On February 20, 2003, Plaintiff was transferred to the MCF in Faribault, Minnesota as a Level 2 minimum security inmate.[1] Several days after his arrival, Plaintiff communicated to Defendant Jon Penton, the Director of Psychological Services at MCF-Faribault, and expressed uneasiness about living in the dormitory setting of the minimum security units. Specifically, Plaintiff stated, "I can't live in a dorm setting like they want me to do in minimum. I will have panic and anxiety attacks." (Penton Aff. Ex. A.) Defendant Penton responded that he would recommend that Plaintiff not be placed in the minimum security unit at MCF-Faribault for mental health reasons. The next day, Defendant Penton placed a mental health hold on Plaintiff so that Plaintiff would not be transferred to the minimum security unit until his mental health status was cleared.

In August 2003, Plaintiff was reclassified as a Level 1 minimum security inmate. On August 9, 2003, Plaintiff requested that Defendant Penton approve Plaintiff's placement on a transfer list to the Level 1 minimum security unit at the MCF in Lino Lakes, Minnesota where the minimum security units are single cells instead of dormitories.[2] (Penton Aff. Ex.

---

[1] MCF-Faribault is a medium security facility, but has Level 1 and Level 2 minimum security units located outside the secure perimeter.

[2] MCF-Lino Lakes has a Level 1 minimum security unit in which 125 offenders are housed in single rooms. The facility is generally viewed by prisoners as the most desirable minimum security placement in the Minnesota system because of the single room assignments. Transfers from MCF-Faribault to MCF-Lino Lakes minimum security are rare. Notably, they require that the prisoner first be confined in the minimum security system at MCF-Faribault and placed on a waiting list for a transfer.

D.)   On August 28, 2003, Plaintiff again asked Penton to recommend that Plaintiff be allowed to transfer to Level 1 minimum security at MCF-Lino Lakes.  (Penton Aff. Ex. E.)   Penton refused to recommend the transfer, and informed Plaintiff's case manager that Plaintiff should not be permitted to transfer to the minimum security setting at MCF-Faribault.

In September 2003, Plaintiff filed a grievance with Defendant Connie Roehrich, the Warden of MCF-Faribault, and requested that the mental health hold be removed so that he could transfer to a minimum security unit at MCF-Lino Lakes.  Defendant Roehrich dismissed the grievance, citing Plaintiff's own concern about anxiety attacks in the dormitory setting in the minimum security unit at MCF-Faribault.

Plaintiff was released from MCF-Faribault on December 24, 2003, and was transferred to a halfway house.  Two months later, Plaintiff violated a condition of his release and was re-incarcerated for approximately seven months.  On October 25, 2004, Plaintiff was released again to intensive supervised release.

**B.     This Action**

Plaintiff commenced this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. He alleges that Defendants wrongfully denied his requests to transfer to a minimum security facility, discriminated against him because he is disabled and because of his status as a Vietnam veteran, and retaliated against him for filing this action.

In October 2004, Plaintiff filed a Motion for Summary Judgment.  Magistrate Judge Boylan recommended that Plaintiff's Motion should be denied and that the Court dismiss this

action with prejudice.  In particular, he determined that Plaintiff's request for injunctive relief is moot, that Plaintiff's claims for monetary damages are barred by qualified immunity, and that Plaintiff's retaliation claim failed as a matter of law.

**DISCUSSION**

**A.     Standard of Review**

Summary judgment may be granted against a moving party and in favor of a non-moving party when the record shows that no genuine issue of material fact exists and the non-movant is entitled to summary judgment as a matter of law.  See Stone Motor Co. v. Gen. Motors Corp., 400 F.3d 603, 607 (8th Cir. 2005) (district court may grant summary judgment sua sponte if the losing party was on notice that he had to come forward with all of his evidence); Johnson v. Bismarck Public Sch. Dist., 949 F.2d 1000, 1004-05 (8th Cir. 1991); Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue

for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.      Injunctive Relief**

Magistrate Judge Boylan found that Plaintiff's request for injunctive relief is moot because Plaintiff has been released from prison.  Plaintiff maintains that his request is proper because he may be incarcerated again.

To obtain injunctive relief, Plaintiff must show a real or immediate threat that he will be wronged again.  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).  Thus, a prisoner's claim for injunctive relief to change prison conditions is moot if he is no longer subject to those conditions.  Id. (citing Wycoff v. Brewer, 572 F.2d 1260, 1262 (8th Cir. 1978)).  Plaintiff has been released from prison and therefore cannot show a real and immediate threat that he would suffer similar injury again in the future.  Id.  (concluding that a claim for injunctive relief against a warden was moot because prisoner had been transferred to a different prison); Randolph v. Rodgers, 253 F.3d 342, 345-46 (8th Cir. 2001) (same).  Moreover, the possibility that Plaintiff will be re-incarcerated and treated in a similar manner is simply too speculative.  See Grandson v. Univ. of Minn., 272 F.3d 568, 574 (8th Cir. 2001).  For example, if Plaintiff is re-incarcerated, the determination of his security level status will be made based on a variety of circumstances that exist at that time.  Thus, the Court cannot speculate as to what Plaintiff's security level status will be in the event Plaintiff is ever re-incarcerated.  Accordingly, Plaintiff's claim for injunctive relief fails as a matter of law.

**C.      Monetary Damages**

1.      <u>ADA</u>

Plaintiff seeks monetary damages against Defendants in their individual capacity for violations of the ADA.  However, the Eighth Circuit Court of Appeals has held that individuals may not be sued in their individual capacities directly under the provisions of the ADA. <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999).

Moreover, the ADA claim fails on the merits because Plaintiff cannot show that he is disabled.  To establish a claim under the ADA, Plaintiff must show that he is a qualified individual with a disability and that Defendants discriminated against him because of his disability.  42 U.S.C. § 12132.  An individual is disabled if he has (1) a physical or mental impairment that substantially limits one or more his major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2).  Thus, Plaintiff must offer evidence that the limitation caused by the impairment is substantial. <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 198 (2002).

Plaintiff contends that his medical records establish that he is disabled.  However, Plaintiff cannot "merely submit evidence of a medical diagnosis of an impairment." <u>Id.</u> Moreover, the exhibits attached to the Complaint show that Plaintiff repeatedly denied that any physical or mental impairment substantially limited him from performing a major life activity. (<u>See</u> Compl. Exs. 2, 6-7, 10, 14-15.)  Accordingly, Plaintiff's claim under the ADA fails as a matter of law.

  2. <u>Section 1983</u>

 Plaintiff also asserts a § 1983 claim against Defendants in their individual capacities, and maintains that Magistrate Judge Boylan erred in finding that Defendants are entitled to qualified immunity as a matter of law. Although Plaintiff does not specify the basis for his § 1983 claim, the Court interprets the Complaint to allege that Defendants violated Plaintiff's rights to equal protection and due process by allegedly denying him the right to transfer to MCF-Lino Lakes because of his status as a Vietnam veteran.

 "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Crow v. Montgomery</u>, 403 F.3d 598, 601 (8th Cir. 2005) (internal quotations and citations omitted). To determine whether the state officials are entitled to qualified immunity, the Court must first consider whether the facts as alleged, taken in the light most favorable to Plaintiff, show that Defendants violated a federal statutory right. <u>Bradley v. Ark. Dep't of Educ.</u>, 301 F.3d 952, 955 (8th Cir. 2002). "If no . . . right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Id.</u> (citation omitted). If Plaintiff's allegations show a violation of such a right, then the Court must inquire whether the right was clearly established. <u>Id.</u> For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id.</u> (citation omitted).

 Plaintiff has failed to show that he had a right to transfer from the medium security at

MCF-Faribault to minimum security at MCF-Lino Lakes. Instead, all medium security inmates first must transfer to the minimum security unit at MCF-Faribault, which provide dormitory housing. Only after living in the minimum security dormitory unit at MCF-Faribault may a prisoner request a transfer to another minimum security facility. Even then, Plaintiff was not assured that he would transfer to MCF-Lino Lakes, as a prisoner may be assigned to another minimum security facility and has no option to choose the facility of his choice. Because Plaintiff had no right to transfer directly to the minimum security unit at MCF-Lino Lakes, Magistrate Judge Boylan correctly found that qualified immunity applies.[3] Accordingly, Plaintiff's § 1983 claim fails as a matter of law.

**C.     Retaliation**

The Complaint contains no allegations of retaliation, and Plaintiff has not filed a motion to amend the pleading to include such allegations. Nevertheless, Plaintiff advanced a retaliation claim in his Motion for Summary Judgment, and now maintains that Defendants retaliated against him by placing Plaintiff in segregation for six days in December 2003 and subsequently revoking his release. However, Plaintiff fails to assert — and the record does not indicate — that Plaintiff exhausted his administrative remedies with respect to the retaliation claim. Accordingly, dismissal of the claim is appropriate.

Moreover, Plaintiff has not stated how Defendants had any role in the allegedly adverse actions. Because Plaintiff has failed to show that Defendants were somehow involved in the

---

[3] Moreover, Plaintiff presents absolutely no evidence that he was discriminated against because of his status as a Vietnam veteran.

8

adverse actions, Plaintiff's retaliation claim fails on the merits. See Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001).

## CONCLUSION

As the statute requires, the Court has reviewed the record regarding the R&R. Based on the review and all the submissions of the parties, the Court **ADOPTS** the R&R (Clerk Doc. No. 35).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 23) is **DENIED**;
2. Summary Judgment is **GRANTED** in favor of Defendants; and
3. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 6, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge